NO. 07-01-0373-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 21, 2003
_____

NATIONAL LOAN INVESTORS, L.P.,

Appellant

v.

FRANK ROBINSON, BETHEL ROBINSON, FIDELITY BETHEL, LTD.,
ZACH ROBINSON AND RUDY ROBINSON, AS CUSTODIANS FOR
RYAN AND ZACH ROBINSON,

Appellees

_____

FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;

NO. 8642; HON. DAVID M. MCCOY, PRESIDING
_____

*Opinion*
_____

Before JOHNSON, CJ., QUINN, J., and BOYD, S.J.[1]

This case involves the topic of fraudulent transfers. National Loan Investors, L.P.

(NLI) sued Frank Robinson, his wife Bethel Robinson, Fidelity Bethel, Ltd., Zach Robinson,

and Rudy Robinson, as custodian under the Texas Uniform Gifts to Minors Act for the

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T
CODE ANN. §75.002(a)(1) (Vernon Supp. 2003).

benefit of Ryan and Zach Robinson, (collectively referred to as the Robinsons) to set aside purported fraudulent conveyances. After trial to a jury, the trial court entered judgment denying NLI recovery. The latter now presents four issues on appeal. Through the first it contends that the trial court erred when it held that reasonably equivalent value and insolvency had to be determined from the debtor's perspective. The second issue concerns whether the trial court erred in refusing to grant NLI judgment, as a matter of law, against the Robinsons. Via the third issue, NLI posits that the trial court erred when it refused to admit into evidence certain testimony from the Robinsons' banker. And, the fourth issue involves the factual sufficiency of the evidence supporting the jury's determination. We reverse.

### Issue One — Creditor's Perspective of Value and Insolvency

NLI is the successor in interest to various loans made by the First National Bank of Panhandle (FNB) directly to Frank and Bethel Robinson or guaranteed by one or more of them. Though collateral secured payment of the debts, other property owned by Frank and Bethel were not the subject of any lien. This property included stock in Robinson Grain Company, realty in New Mexico, and stock in Robinson Land and Cattle Co. (RLC). These items were the subject of the purported conveyances which NLI sought to avoid as fraudulent. Effort was made by NLI to show, from a creditor's perspective, that 1) neither Frank nor Bethel received reasonably equivalent value for the property, and 2) the transferors were insolvent when the conveyances were effectuated. However, the trial court refused to admit the testimony and evidence because, in its view, value and solvency had to be determined from the debtor's perspective. This constituted error, according to NLI. We agree and sustain the issue.

2

There exist various ways in which to establish a claim of fraudulent transfer. The one pertinent here is found at §24.006(a) of the Texas Business and Commerce Code. The provision states that a transfer is fraudulent as to a creditor whose claim arose before the transfer was made 1) if the debtor made the transfer "without receiving a reasonably equivalent value in exchange", and 2) "the debtor was insolvent at that time or . . . became insolvent as a result of the transfer . . . ." TEX. BUS. & COM. CODE ANN. §24.006(a) (Vernon 2002). Though the legislature did not define the exact parameters of the phrase "reasonably equivalent value," it nonetheless expressed that it included "without limitation, a transfer . . . that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." *Id.* at §24.004(d). As to the meaning of insolvency, we were told by the legislature that a debtor was in such a state when the sum of his debts was greater than all of his assets at a fair valuation, *id*. at §24.003(a), or when he "is generally not paying [his] debts as they become due. . . ." *Id.* at §24.003(b). Finally, the legislature also directed that these provisions, and all found in the Texas Uniform Fraudulent Transfer Act, be applied in a way "effectuat[ing] its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." *Id.* at §24.012.

According to precedent from this state, fraudulent conveyance laws exist to prevent debtors from moving their property beyond the reach of their creditors. *Harrisburg Nat. Bank v. Geo. C. Vaughan & Sons*, 204 S.W.2d 9, 12 (Tex. Civ. App.—Galveston 1947, writ dism'd w.o.j.). Simply put, the beneficiaries of these laws are creditors for they help preserve the assets available to satisfy a debtor's liability. That is why those cases which

3

have addressed the dispute raised by NLI have uniformly held that the creditor's perspective is the relevant focal point. *E.g., In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000); *In re Prejean*, 994 F.2d 706, 708-09 (9th Cir. 1993); *Mussetter v. Lyke*, 10 F. Supp. 2d 944, 962 (N. D. Ill. 1998) *aff'd*, 202 F.3d 274 (7th Cir. 1999); *Interpool, Ltd. v. Patterson,* 890 F. Supp. 259, 267 (S.D.N.Y. 1995); *In re Consolidated Capital Equities, Corp.,* 143 B.R. 80, 87 (N.D. Tex. 1992); *In re Dondi Financial Corp.,* 119 B.R. 106, 109 (Bktcy. N.D. Tex. 1990); *Hansen v. Cramer*, 39 Cal. 2d 321, 245 P.2d 1059, 1060-61 (1952). Moreover, the Robinsons have cited no authority to the contrary. So, whether the debtor received reasonably equivalent value for the property he transferred is determined from the creditor's perspective, *i.e.*, whether, from the reasonable creditor's viewpoint, the property received by the debtor has a reasonably equivalent value to the property conveyed beyond the creditor's reach.[2] *Id.* The same is also true when determining insolvency. The latter must be evaluated from the creditor's perspective. *In re Meyer,* 206 B.R. 410, 418 (Bktcy. E. D. Va. 1997), *vacated on other grounds,* 244 F.3d 352 (4th Cir. 2001); *In re Martin,* 145 B.R. 933, 947 (Bktcy. N. D. Ill. 1992).

In reaching the foregoing conclusion, we reject the reasons proffered by the Robinsons to uphold the trial court's decision. First, while it may be that the phrase "creditor's perspective" appears nowhere in the act, neither does the phrase "debtor's perspective." Yet, because the statute enables creditors to avoid transfers of property by debtors, it is clear that it was enacted to help creditors, not debtors. And, testing the

---

[2]Indeed, if the legitimacy of a conveyance was determined from the perspective of the debtor, it is questionable whether any transfer could ever be considered fraudulent *viz* his creditors. No doubt the debtor could always divine some explanation for transferring the property as he did, even though his creditors are left with nothing to satisfy the debt. He could always divine some subjective benefit which may be valueless to the creditor.

legitimacy of the transfer from a debtor's perspective, as opposed to that of a reasonable creditor, would not further that purpose. Second, we acknowledge that in defining a fraudulent conveyance, the legislature utilized the word "debtor" in describing who made the transfer and who was insolvent. Obviously it did so since the act purports to avoid transactions in which the "debtor" engaged. Yet, from the mere inclusion of that word in the statute one cannot reasonably deduce that the legislature intended for it to connote application of the debtor's perspective when testing the legitimacy of the conveyance. Again, to do so would be to ignore the purpose of the statute.

Nor can we say that the evidence of the creditor's perspective was irrelevant or inadmissible because NLI failed to plead that the legitimacy of the transfer should be viewed from the creditor's perspective. Yet, the Robinsons cite no authority suggesting that such matter must be plead. Moreover, since neither the factfinder nor the trial court had an option to choose one perspective over the other, we can see no reason why a creditor would be obligated to invoke the creditor's perspective in its petition if it otherwise properly alleges a fraudulent transfer.

Nor can we say that evidence of the creditor's perspective was subject to exclusion because NLI allegedly failed to cooperate during discovery. To the extent the Robinsons may have requested the production of evidence pertaining to the "creditor's perspective," they fail to cite us to a particular discovery request appearing of record. Nor do they cite us to anything of record indicating that NLI improperly withheld that information. Rather, mention is made to an objection uttered by NLI and to a ruling of the trial court sustaining that objection. Thus, one can hardly suggest that exclusion of the evidence at trial was warranted because of discovery abuse when the trial court sustained NLI's objection. Nor

5

can we even say that the discovery sought was pertinent to the issue before us. Apparently, it consisted of the sum NLI paid the Federal Deposit Insurance Corporation for the Robinsons' promissory notes. We see no correlation between the price of those notes and the value of the property the Robinsons received in exchange for conveying other property during an utterly distinct transaction.

In sum, the trial court erred in denying NLI opportunity to present evidence illustrating the purported validity of the conveyances at issue from the creditor's perspective. We also conclude that the error was harmful.

### *Issue Two - Failure to Grant Judgment as a Matter of Law*

Via its second issue, NLI asks us to find that the trial court erred in failing to grant it judgment. It was allegedly entitled to same because it established, as a matter of law from the creditor's perspective, that the Robinsons transferred assets without receiving reasonably equivalent value at a time when they were insolvent or became insolvent as a result of the transfers. We overrule the issue.

While the trial court erred in excluding the evidence pertaining to the creditor's perspective of the conveyance, that does not entitle NLI to judgment as a matter of law. Evidence is not conclusive unless it was admitted by the court and the opposing party failed to rebut it. *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 275 (Tex. 1995). So, until the evidence at bar is actually admitted and the Robinsons are afforded opportunity to rebut it (and fail in that regard), we cannot say that NLI was entitled to judgment as a matter of law.

6

### *Issue Three - Exclusion of Testimony as to Intent*

In its third issue, NLI complains that the trial court erred in refusing to allow Steve Sherrill, a banker, to testify about the intent or motives underlying the Robinsons' conveyances. We overrule the issue.

The record indicates that the sole basis for Sherrill's opinion was his belief that "a lot of times people will put things in trust to protect them from outside creditors." However, he never discussed with the Robinsons their reasons for engaging in the transfers. Thus, his opinion was purely speculative. And, even though Sherrill was allowed to voice his opinion as to Frank's character, that testimony was based on his personal experience gained through numerous business dealings with the Robinsons. Again, there was no indication that Sherrill had any personal knowledge as to the motives underlying the Robinsons' decision to convey the property at issue. Since a witness may not testify to a matter unless he has personal knowledge of it, TEX. R. EVID. 602, and nothing indicates that Sherrill had personal knowledge of the Robinsons' motives, the trial court did not abuse its discretion in excluding the testimony.

### *Issue Four - Factual Insufficiency of the Evidence*

Via its fourth issue, NLI requests that we reverse the judgment and remand the cause for a new trial because the jury's verdict was against the great weight and preponderance of the evidence. Having found under issue one that the trial court committed harmful error, we need not address issue four. Our sustaining it could only result in a new trial, and that is the relief which we grant in response to NLI's first issue.

7

Accordingly, we reverse the judgment and remand the cause for further proceedings.

Brian Quinn
Justice