FELDMAN/MATZ INTERESTS, L.L.P. d/b/a Feldman Hanszen L.L.P. and d/b/a Stewart A. Feldman & Associates, L.L.P., Stewart A. Feldman, Esq., Rapid Management Corp., and Rapid Settlements, Ltd., Appellants,

v.

SETTLEMENT CAPITAL CORPORATION, Appellee.

In re Feldman/Matz Interests, L.L.P. d/b/a Feldman Hanszen L.L.P. and d/b/a Stewart A. Feldman & Associates, L.L.P., Stewart A. Feldman, Esq., Rapid Management Corp., and Rapid Settlements, Ltd.

Nos. 14–03–01139–CV, 14–03–01103–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 13, 2004.

**880**

Michael B. Lee, Forrest J. Wynn, Harvey G. Brown, Jr., Michael Alan Choyke, Houston, for relator.

Lawrence L. Bellatti, Cameron Pope, Houston, Robert Weathersby, Dallas, for respondent.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

In this consolidated mandamus action and accelerated interlocutory appeal, we not only have to decide if the Federal Arbitration Act or the Texas Arbitration Act applies, but also if the trial court had to refer the entire case—including the plaintiff's request for injunctive relief against the defendants—to arbitration. For the reasons discussed below, we conclude that the Federal Arbitration Act applies and that the trial judge should have referred all of the case, including the injunctive relief request, to arbitration. As a result, we dismiss the appeal and conditionally grant the petition for writ of mandamus.

## BACKGROUND

Settlement Capital Corporation purchases structured settlement payment rights and, in some cases, makes loans secured by its customers' rights to future payments. In Texas, as in many other states, transfers of structured settlement rights requires court approval. *See* TEX. CIV. PRAC. & REM.CODE §§ 141.001–141.007 (the "Structured Settlement Protection Act"). In October of 2001, Settlement Capital executed a legal services agreement with Stewart A. Feldman & Associates, L.L.P., to represent it in obtaining court approval of its transactions. The agreement identified the scope of services as the following:

> We have been retained to assist Settlement Capital Corp. in obtaining court approval of structured settlement transfers in accordance with the Texas Civil Practice & Remedies Code. In this regard, the litigation services and other work will be provided in accordance with and at the rates set forth in the attached Guidelines on Firm Administration and Billing.

The Guidelines on Firm Administration and Billing included these arbitration provisions:

> Should any dispute arise out of or in conjunction with the attorneys' fees and/or costs and/or expenses of the legal work performed for you or your affiliates by THE LAW OFFICES OF STEWART A. FELDMAN & ASSOCIATES, L.L.P. or its agents or principals, we agree to submit any and all such fee disputes that cannot be settled by good faith negotiation between the parties exclusively to the Houston Bar Association's Fee Dispute Committee for binding and nonappealable resolution.
>
> With respect to any and all other disputes or claims between us whatsoever related to or arising out of our services, we agree that either of us may submit

the same to a nationally recognized, neutral, arbitration association (eg., AAA, JAMS, etc.) for final, binding and nonappealable resolution pursuant to its single arbitrator, expedited arbitration rules. While we fully expect (and hope) that any dispute will be resolved directly between us, the State Bar of Texas investigates and prosecutes professional misconduct of Texas attorneys. Should you have any questions, the Office of the General Counsel of the State Bar will provide you with information regarding the Bar's procedures. If the first arbitration organization which receives a written demand for arbitration of the dispute from either of us does not complete the arbitration to finality within four months of the written demand, either party then may file a written demand for arbitration of the dispute with another nationally recognized, neutral, arbitration association, with the prior arbitration association then being immediately divested of jurisdiction, subject to a decision being rendered by the replacement arbitration association within four months of the written demand being filed with the replacement arbitration association. The decision of the arbitrators shall be final in all respects and shall be non-appealable. Any person may have a court of competent jurisdiction enter into its record the findings of such arbitrators for all purposes including for the enforcement of such award. We look forward to working with you.

Kent M. Hanszen signed the agreement on behalf of the Feldman law firm; Matthew T. Bracy, Settlement Capital's in-house counsel, signed for Settlement Capital. Thereafter, the Feldman law firm assisted Settlement Capital in obtaining court approval of numerous structured settlement purchases and other litigation matters.

Sometime after this, Stewart Feldman set up a company named Rapid Settle-

ments that apparently does much, if not all, of the same work as Settlement Capital. After learning about Rapid Settlements, Settlement Capital filed a lawsuit against the Feldman law firm, Stewart A. Feldman, individually, Rapid Management Corp., and Rapid Settlements, Ltd. (collectively, "Feldman"). It alleged that Stewart Feldman secretly set up Rapid Settlements to directly compete with Settlement Capital in the business of buying structured settlement cash flows, using confidential marketing, business, and legal information obtained from Settlement Capital, a client of the Feldman law firm. Among other things, Settlement Capital alleged that, in early 2003, Stewart Feldman surreptitiously set up an internet domain name for Rapid Settlements and incorporated Rapid Management Corp. with his wife and him as directors. In turn, Settlement Capital alleged, Rapid Management Corp. became the general partner of Rapid Settlements, Ltd., whose president, Scott D. Shcolnik, was an employee of the Feldman law firm. Settlement Capital further alleged that Rapid Settlements surreptitiously operates out of the Feldman law firm's offices, employs members of the firm's staff to conduct its business, and markets to and solicits Settlement Capital's current and former customers.

Settlement Capital's causes of action included breach of fiduciary duty and unfair competition; it later supplemented its petition to add a claim for legal malpractice. It also sought an application for a temporary restraining order, temporary injunction, and permanent injunction. The same day Settlement Capital filed its lawsuit, it obtained a temporary restraining order against Feldman and "their agents, servants, employees, representatives, and those in active concert or participation with them." The temporary restraining order enjoined the defendants from doing the following:

1. Removing, retaining, duplicating, misappropriating, using, disclosing, or communicating any confidential, privileged, and/or proprietary information, documents, or software belonging to [Settlement Capital];

2. Soliciting, marketing, buying, pooling, and/or securitizing of structured settlement payment rights from or to current or former customers of [Settlement Capital] or any other person or entity.

The temporary restraining order also set Settlement Capital's application for a temporary injunction for a hearing on October 2, 2003.

Three days before the hearing, on September 29, 2003, Feldman filed a motion to compel arbitration and stay proceedings. On October 1, 2003, the trial judge delivered her ruling on the motion to all parties by fax as follows: "denied in part as to temp. inj. hearing." Feldman immediately filed a petition for writ of mandamus, an emergency motion to stay the underlying proceedings, and an appeal. On October 2, this Court terminated and stayed the temporary injunction hearing until we reached a decision on the petition for writ of mandamus or until we entered further orders.

## ANALYSIS

Settlement Capital does not dispute that its legal services agreement with the Feldman law firm contains a valid and enforceable arbitration provision. It does not dispute that its claims fall within the scope of the arbitration provision. However, the parties vigorously dispute whether the agreement is governed by the Federal Arbitration Act ("FAA")[1] or the Texas Gen-

---

1. *See* 9 U.S.C. §§ 1–16.

eral Arbitration Act ("TGAA"),[2] and therefore whether the trial court's action is properly reviewed by a petition for a writ of mandamus or an accelerated, interlocutory appeal. The parties also vigorously dispute whether the trial court erred in refusing to stay the hearing on Settlement Capital's request for a temporary injunction. We will address each of these issues in turn.

## I. The Federal Arbitration Act Applies

### A. The FAA Reaches as Far as the Commerce Clause Itself.

■ A party seeking relief from a denial of arbitration sought under the FAA has no adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion. *In re L & L Kempwood Associates, L.P.*, 9 S.W.3d 125, 128 (Tex.1999) (per curiam). However, a trial court's order denying arbitration, if based upon the TGAA, is subject to interlocutory appeal. TEX. CIV. PRAC. & REM.CODE § 171.098(a)(1). The arbitration clause in the parties' legal services agreement does not specifically invoke either the Texas Arbitration Act or the FAA, and the trial court made no ruling on which Act applies. Because the parties dispute whether the FAA or the TGAA applies, Feldman filed both a petition for writ of mandamus and an interlocutory appeal, which we have consolidated. Therefore, we first consider whether the FAA or the TGAA applies to this dispute to determine the proper procedural disposition of the case.

■ The party seeking to compel arbitration by mandamus must first establish the existence of an arbitration agreement subject to the FAA and show that its claims are within the scope of that agreement. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex.2002) (per curiam). Federal policy embodied in

the FAA favors agreements to arbitrate and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753–54.

The FAA applies to a written arbitration provision in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. In *Allied–Bruce Terminix Companies v. Dobson*, the United States Supreme Court held that we must read this language broadly so that the FAA reaches to the full limits of the Commerce Clause of the United States Constitution. *Allied–Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 274–77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Additionally, the Court interpreted the FAA's language as insisting that the transaction "in fact" involve interstate commerce, even if the parties did not contemplate an interstate commerce connection. *Id.* at 281, 115 S.Ct. 834. Our Texas Supreme Court has acknowledged *Allied–Bruce Terminix* as standing for the proposition that "the FAA extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re L & L Kempwood Associates, L.P.*, 9 S.W.3d at 127.

### B. The Legal Services Agreement Between Feldman and Settlement Capital Involves Interstate Commerce.

■ Feldman contends that the FAA applies in this case because the legal services agreement involves interstate commerce. Conversely, Settlement Capital contends the fee agreement is between a

2. *See* TEX. CIV. PRAC. & REM.CODE §§ 171.001– .098.

Texas corporation and Texas attorneys to perform services under Texas law in Texas; therefore, it reasons that the TGAA applies.[3] We find, however, that Feldman has met its burden to demonstrate that the FAA applies.

In its petition, Settlement Capital alleged that it "has done business with individuals all over the country" and its representatives "provided the Feldman Law Firm with extensive information about their business operations and court proceedings outside the state of Texas." Settlement Capital also alleged that structured settlement legal work "demands particular expertise, including specialized knowledge of [its] business practices, procedures and protocols," and that it discussed its confidential market, business and legal strategies with the Feldman law firm. All of this information was provided in the course of the representation that is the subject of the underlying dispute. Indeed, Settlement Capital affirms in its petition that Feldman's marketing efforts and business operations are based on "information that *could only* have been garnered in the course of the Feldman Law Firm's representation of [Settlement Capital]."

Moreover, in explaining the court approval process, Settlement Capital alleged that it is required to disclose details of its transactions to "interested parties" including "the entities and companies who own and issue the annuity funding the structured settlement payments." Matthew Bracy, Settlement Capital's in-house counsel, testified in deposition that Settlement Capital purchases structured payments from annuity companies all over the United States, including for the work the Feldman law firm was handling. Therefore, by Settlement Capital's own admissions, the Feldman law firm's legal services "in fact" involved interstate commerce. *See Allied–Bruce Terminix*, 513 U.S. at 281, 115 S.Ct. 834.

Given the foregoing, we hold that the FAA applies to the legal services agreement between Settlement Capital and the Feldman law firm. We therefore dismiss the appeal and turn to the consideration of the merits of Feldman's mandamus action.

## II. The Trial Court Erred in Refusing to Stay the Hearing on Settlement Capital's Request for a Temporary Injunction.

 Feldman next contends that, under the FAA, the trial court abused its discretion by failing to grant Feldman's motion to compel arbitration and stay proceedings, and by refusing to stay the evidentiary hearing on Settlement Capital's application for a temporary injunction. Settlement Capital responds that, even if the FAA applies to the legal services agreement (which it disputes), the trial court was entitled to hear evidence and, if warranted, grant temporary injunctive relief to maintain the status quo.

### A. Under Section 3 of the FAA, an Application for Arbitration Stays Trial of the Action.

---

3. In its brief in response to Feldman's appeal, Settlement Capital also argues that its claims are properly characterized as personal injury claims, and the agreement to arbitration is unenforceable because it was not executed by both Settlement Capital, as the client, and its counsel in accordance with the requirements of Texas Civil Practice and Remedies Code section 171.002. *See* TEX. CIV. PRAC. & REM. CODE § 171.002(c)(1)-(2) (providing that the TGAA does not apply to a claim for personal injury unless (1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate, and (2) the agreement is signed by each party and each party's attorney). Because we hold that the FAA applies to the legal services agreement and dismiss the appeal, we do not reach these arguments.

Section 3 of the FAA, titled "Stay of proceedings where issue therein referable to arbitration," provides as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

**B. This Court Has Held that a Trial Court Cannot Hold a Temporary Injunction Hearing When Arbitration Has Been Invoked.**

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,* the trial court granted an order compelling arbitration and, in connection with its order staying the case, denied the plaintiff's application for a temporary injunction without conducting an evidentiary hearing. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,* 666 S.W.2d 604, 608 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985). This court affirmed, concluding that staying "the trial" included staying an application for a temporary injunction. *See id.* at 608–09. In so holding, the *McCollum* court noted that "the policy behind having the arbitration policy in the first place is that once the arbitration procedure is started it should be speedy and not subject to delay and obstruction in the courts." *Id.* The court then cited with approval the analysis in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro,* 577 F.Supp. 616 (W.D.Mo.

1983), in which that court concluded that, because a ruling on a motion for preliminary injunction involved consideration of the merits of the arbitrable claim, the trial court's findings "could interfere with the arbitrator's independent determination of the issues." *McCollum,* 666 S.W.2d at 609 (quoting *DeCaro,* 577 F.Supp. at 624).

**C. The Courts in the Fifth Circuit Hold that a Trial Court has Limited Authority Over a Case Subject to Arbitration and It May Not Hold a Temporary Injunction Hearing when the Parties' Agreement Does Not Provide for Maintaining the Status Quo.**

The federal courts in Texas agree that issuance of a preliminary injunction is not appropriate when the underlying claims are subject to arbitration. For example, in *Smith v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 575 F.Supp. 904 (N.D.Tex. 1983), the district court denied an application for temporary injunction on the grounds that section 3 of the FAA requires a trial court to stay a suit in which the issues involved are referable to arbitration under a written agreement. *Id.* at 904. Refusing to consider the issues raised in the application for temporary injunction, the court concluded that "[i]n considering an application for a stay pursuant to Section 3 of the Act, a federal court can consider only issues relating to the making and performance of the agreement to arbitrate." *Id.* at 905.

In *RGI, Inc. v. Tucker & Associates, Inc.,* 858 F.2d 227, 230 (5th Cir.1988), the Fifth Circuit considered, but did not reach, the issue whether section 3 of the FAA precludes the issuance of a preliminary injunction pending arbitration. The court noted that some federal circuit courts have held that it does, while others have held that preliminary injunctive relief is permissible to maintain the status quo pending arbitration. *Id.* at 228–29. However, in

the case before it, the court determined that it need not resolve the issue. It noted that the Fifth Circuit agreed with the other circuits in certain circumstances: when the parties expressly contemplated maintaining the status quo pending arbitration. When they contemplated maintaining the status quo, a court can issue a preliminary injunction before arbitration. In such a case, the *RGI* court reasoned, "the court need not involve itself in balancing the various factors to determine whether a preliminary injunction should be issued." *Id.* at 230. The parties in *RGI* clearly contemplated that the status quo was to continue pending arbitration; their agreement provided, "[i]n the event that a dispute is submitted for arbitration ... this Subcontract *shall continue in full force and effect* until such decision is rendered." *Id.* Therefore, the court held that the trial court did not err in ordering a preliminary injunction to prevent one party from terminating the contract in contravention of the agreement. *Id.* It noted that the district court's order both implemented the parties' bargained-for relationship and was consistent with the overriding federal policy to expedite arbitration. *Id.* at 228–29. Thus, a court can issue preliminary injunctive relief pending arbitration for the limited purpose of "insur[ing] that the arbitration clause of the contract ... be carried out as written." *Id.* at 230.

More recently, the Southern District of Texas concluded that, unless the parties expressly agreed to "maintain the status quo," pre-arbitration injunctive relief should be denied. In a September 1, 2003 memorandum and order issued in *Kellogg*

*Brown & Root International, Inc. v. Qatar Chemical Co.,* No. H–03–3337 (S.D.Tex. Sept. 1, 2003), the district court, relying on *RGI,* concluded that courts should award injunctive relief on an arbitrable claim only when the arbitration agreement itself expressly provides for such relief:

> [T]he Court finds that *RGI* stands for the proposition that it is appropriate for district courts, by means of injunctions, to enforce parties' agreements to arbitrate *according to their terms.* Furthermore, in keeping with the well-established policy of "mov[ing] the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," the district courts should not concern themselves with all of the terms of the contract or with injecting themselves into the merits of the parties' dispute, but should limit themselves (and any remedies they impose) to "expediting the procedural move to arbitration." *Id.* at 229–30 (quoting *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

*Id.*

In response to this case law, Settlement Capital argues that this court's reasoning in *McCollum* is dicta, and that the majority of the federal circuits addressing the issue have held that the FAA does not preclude a district court from issuing a preliminary injunction in an arbitrable dispute.[4] Settlement Capital argues that courts should be permitted to issue preliminary injunctive relief to preserve the status quo pending arbitration which in turn

---

4. In support of its assertion, Settlement Capital cites to cases including the following: *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373 (6th Cir.1995); *Ortho Pharm. Corp. v. Amgen, Inc.,* 882 F.2d 806 (3d Cir.1989); *PMS Distrib. Co. v. Huber & Suhner, A.G.,* 863 F.2d 639 (9th Cir.1988); *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir.1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048 (4th Cir.1985); *Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co. of New York, Inc.,* 749 F.2d 124 (2d Cir.1984); *Merrill Lynch, Peirce, Fenner & Smith, Inc. v. Scott,* No. 83–1480, 1983 WL 407976 (10th Cir. May 12, 1983) (unpublished opinion).

would preserve the meaningfulness of the arbitration process and to prevent it from being merely a "hollow formality." *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir.1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053–54 (4th Cir.1984). We disagree that we can ignore *McCollum* and we will follow it and the Fifth Circuit precedent.

### D. Our Precedent and Fifth Circuit Precedent Control This Case.

We acknowledge that a split exists among the federal circuits and that some circuits have allowed preliminary injunctions even when the parties' agreement did not provide for the preservation of the status quo. However, the courts in the Fifth Circuit have held that a court may not enter a preliminary injunction when the parties' agreement did not contemplate maintaining the status quo. *See, e.g., RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d at 230; *Smith v. Merrill Lynch, Pierce, Fenner & Smith*, 575 F.Supp. at 905; *Kellogg Brown & Root Int'l, Inc. v. Qatar Chemical Co.*, No. H–03–3337 (S.D. Tex. Sept 1, 2003). In *McCollum*, which is not dicta, we also held that a trial court lacked authority to grant a temporary injunction pending arbitration. We choose to follow these cases.

We need not go as far as *McCollum*, which did not contemplate the possibility that a trial court might hear an injunction request if the parties' agreement states an intent to maintain the status quo pending arbitration.[5] This legal services agreement contains no express language demon-strating that the parties contemplated court intervention to maintain the status quo. And, we agree with Feldman that the relief Settlement Capital seeks is not to maintain the status quo provided in the legal services agreement, but to temporarily enjoin Feldman from conducting business.[6] Moreover, we note that Settlement Capital does not dispute that the subject matter of its claims are within the scope of the legal services agreement's arbitration provision. Consequently, the injunctive relief it seeks would require the court to consider the merits of the underlying dispute, which would interfere with the arbitrator's independent determination of the issues and frustrate the strong federal policy in favor of speedy implementation of arbitration without delay and obstruction in the courts. *See McCollum*, 666 S.W.2d at 608–09.

### E. Response to the Dissent: The Trial Judge was Required to Stay the Proceedings.

■ The dissent argues that the trial judge was not required to stay the proceedings and refer the case to arbitration because Feldman had not submitted the case to an arbitration association. The dissent argues that the agreement required the case to be submitted to an arbitration association before the court was required to stay proceedings.[7] We think this argument ignores two points: (1) Under section 3 of the FAA, when a trial judge determines that an agreement requires a dispute to be arbitrated, the judge must stay proceedings (*see* 9 U.S.C. § 3); and (2) The agreement in this case did not alter the rule laid out in section 3

---

**5.** It appears that the *McCollum* parties did not address this possibility with the court.

**6.** At oral argument, Settlement Capital contended that the fiduciary obligations an attorney owes its client are ongoing, and so should be incorporated into the legal services agreement to imply an agreement between the par-ties to maintain the "status quo" of the attorney—client relationship-and therefore provide a basis for injunctive relief. However, Settlement Capital provides no legal authority for us to read such an implied term into the agreement, and we decline to do so.

**7.** This issue was not raised in the trial court.

**888**

of the FAA because (a) it was not a limitation on how a party might invoke arbitration and (b) stating that either party "may" submit a disagreement to arbitration has been interpreted to mean that either party may require arbitration. We discuss each briefly.

First, when an agreement provides for arbitration and one of the parties files with the trial judge an application to stay so that the matter can be arbitrated, the judge is to stay the trial proceedings so that the parties can arbitrate their dispute. *See* 9 U.S.C. § 3. This requirement to stay arises from section 3 of the FAA. *Id.* The stay is not dependent on a party's submission of the dispute to an arbitration association. In fact, section 3 does not mention submission to an arbitration association; it refers only to an application to stay filed with the trial court. *Id.* Thus, nothing in the FAA supports the dissent's position.

█ Second, this agreement did not alter the rule set out in section 3 of the FAA. To begin with, this agreement does not state that only a submission of the dispute to an arbitration association will trigger the arbitration clause. Instead, it merely states that either of the parties may submit the dispute to an arbitration association for arbitration of the dispute. That is merely another way of saying that either party may require the other to arbitrate—not a limitation on how a party may invoke arbitration. Secondly, although the agreement stated that either party "may" submit disagreements to arbitration, a number of the federal circuits—including the Fifth Circuit—have interpreted similar language to mean that either party has the power to require arbitration. *See, e.g., Deaton Truck Line, Inc., v. Local Union 612,* 314 F.2d 418 (5th Cir.1962); *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 879 (4th Cir.), *cert denied,* 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996); *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, Local 1969,* 683 F.2d 242, 246–47 (7th Cir.1982); *Local 771, I.A.T.S.E., AFL–CIO v. RKO Gen., Inc.,* 546 F.2d 1107, 1116 (2d Cir.1977); *Bonnot v. Cong. of Indep. Unions Local No. 4,* 331 F.2d 355, 359 (8th Cir.1964). Thus, generally, an agreement to arbitrate is mandatory even though it contains permissive terms such as "may." This interpretation supports the federal scheme to encourage arbitration. We see no reason to depart from the reasoning of these cases.

## CONCLUSION

In conclusion, we find that the Federal Arbitration Act applies to the legal services agreement between the Feldman law firm and Settlement Capital. We dismiss Feldman's appeal and conditionally grant its petition for writ of mandamus. We are confident the trial court will withdraw its October 1, 2003 order denying in part Feldman's motion to compel arbitration and stay proceedings and will enter an order granting Feldman's motion to compel arbitration and stay proceedings in accordance with this opinion. Our writ will issue only if the trial court fails to do so.

EDELMAN, J., dissenting.

RICHARD H. EDELMAN, Justice, dissenting.

The Federal Arbitration Act ("FAA") provides for: (1) stays of proceedings in which an issue is referable to arbitration and the applicant for the stay is not in default in proceeding with such arbitration; and (2) orders compelling arbitration when a party has failed or refused to comply with an arbitration agreement. 9 U.S.C.A. §§ 3, 4 (West 1999);[1] *E.E.O.C. v.*

---

1. Where an issue is referable to arbitration, but a party is not in breach of an arbitration agreement, Section 3 allows courts only to

*Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Although there is a liberal federal policy favoring arbitration agreements, absent some ambiguity in the agreement, it is the language of the contract that defines the scope of disputes subject to arbitration. *E.E.O.C.*, 534 U.S. at 289, 122 S.Ct. 754. The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so. *Id.* at 293, 122 S.Ct. 754. Its purpose was to make arbitration agreements *as* enforceable as other contracts, not more so. *Id.* at 294, 122 S.Ct. 754. Therefore, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *Id.* While ambiguities in the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. *Id.* Arbitration under the FAA is a matter of consent, not coercion. *Id.*

In this case, the applicable contract language provides that with regard to the specified disputes, including the one in this case, either party "may" submit it to an arbitration association for binding arbitration. This language is permissive, rather than mandatory, in the sense that either party has a right to require arbitration, but neither is required to arbitrate if the other does not invoke the right.[2] At the time Feldman filed its motion (the "motion") to compel arbitration and stay proceedings, it had not (and still has not) attempted to submit the dispute to an arbitration association.

The majority holds that filing the motion was itself sufficient to invoke Feldman's rights to compel arbitration and stay the proceedings. However, at the time Feldman filed its motion, Settlement Capital was under no obligation to arbitrate because Feldman had not submitted the dispute to an arbitration association and was not required to do so. Because no obligation to arbitrate existed at that time, Settlement Capital was not then in breach of any such obligation, and Feldman thus had no right to compel arbitration under section 4.

Similarly, in that Settlement Capital had not submitted the dispute to an arbitration association, it was within the trial court's discretion to conclude that the matter was not yet referable to arbitration (or, alternatively, Settlement Capital was in default in proceeding with arbitration),[3] such that the requisites had not been met to stay the proceedings under section 3. Moreover, because the plain meaning of the language of the agreement in these respects is unambiguous, there is nothing to construe in

---

stay proceedings, not compel arbitration. *See Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir.2002).

**2.** The majority cites cases purportedly holding that an agreement to arbitrate is mandatory even if it uses permissive terms such as "may." If this is true, parties are legally incapable of contracting for arbitration that is required only if one or the other requested it, contrary to the principles stated in *E.E.O.C.*, above. *See also Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Indus. Workers of Am.*, 36 F.3d 712, 715–716 (7th Cir.1994)

("The dispute does not come within § 4 of the Arbitration Act because no one has demanded arbitration.... It does not come within § 3 because, given the contractual nature of arbitration, a dispute that neither side wants to arbitrate is not 'referable to arbitration'—and perhaps because the union, by refusing to submit its own demand is 'in default.' ").

**3.** *See Briggs*, 36 F.3d at 716 ("This is not to say that a dispute is 'referable to arbitration' only if a party has made a formal demand; ... requests in the course of litigation may suffice.").

favor of arbitration. Therefore, the trial court did not abuse its discretion in denying the motion, and Feldman's mandamus petition should be denied.