**METRA UNITED ESCALANTE, L.P., et al., Appellants,**

v.

**The LYND COMPANY, Appellee.**

No. 04–04–00540–CV.

Court of Appeals of Texas, San Antonio.

Dec. 29, 2004.

Lamont A. Jefferson, Ben L. Meches, Lisa S. Barkley, Haynes and Boone, L.L.P., Thomas D. Bracey, Law Office of Thomas D. Bracey, San Antonio, for appellants.

Rochel J. Lemler–Clark, Lemler & Associates, P.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

This is an accelerated appeal of a temporary injunction order. The issues presented on appeal are: (1) whether the trial court abused its discretion in granting the temporary injunction; (2) whether the temporary injunction violates Rule 683 of the Texas Rules of Civil Procedure; and (3) whether the compliance provisions of the temporary injunction are imprecise. We conclude that the injunction order is overly broad. Accordingly, we reverse the order and remand the cause to the trial

court with instructions to enter a modified order consistent with this opinion.[1]

### BACKGROUND

Metra United Escalante, LP, Metra United Ashley Oaks, LP, Metra United Audubon, LP, Metra United Cimarron, LP, Metra United Grand Cypress, LP, Metra United Kenton, LP, Metra United Peppermill, LP, Metra United Promontory, LP, Metra United Canyon, LP, and Metra United Bluffs, LP are Delaware limited partnerships that each own an apartment complex in San Antonio, Texas. Around December of 2002, each of the Metra limited partnerships entered into a management agreement with The Lynd Company. Each of the management agreements except those relating to Escalante and Promontory contain a mandatory arbitration clause.

In December of 2003, the Metra limited partnerships terminated Lynd's management agreements without the requisite notice. Lynd was owed certain fees and expenses as a result of the termination which were not paid.

In March of 2004, Escalante sold its apartment complex. The proceeds from the sale were deposited into an intercompany account controlled by Metra United Holding LLC. Within days, the proceeds from the sale were distributed to Escalante's equity holders with the exception of approximately $500,000, which remained in an intercompany account. Other than the intercompany account receivable, Escalante's only asset was an operating account that did not contain a balance sufficient to pay the liability owed to Lynd arising from the termination of the management agreement.

On March 25, 2004, Lynd filed an application for temporary restraining order and temporary injunction. A temporary restraining order was entered, and the case was removed to federal court where the temporary restraining order was extended. After the case was remanded to the trial court, the trial court held a two-day hearing on Lynd's request for a temporary injunction. At the conclusion of the hearing, the trial court entered a temporary injunction. After a hearing on Metra's request to dissolve the temporary injunction, the trial court entered an amended order.

### STANDARD OF REVIEW

 In an interlocutory appeal from a temporary injunction, we do not review the merits of the applicant's case. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex.1978); *Menna v. Romero*, 48 S.W.3d 247, 252 (Tex.App.-San Antonio 2001, pet. dism'd w.o.j.). Rather, we limit our review to whether there has been a clear abuse of discretion. *Davis*, 571 S.W.2d at 861; *Menna*, 48 S.W.3d at 252. We may not substitute our judgment for that of the trial court's; we merely determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Davis*, 571 S.W.2d at 861; *Menna*, 48 S.W.3d at 252. An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence. *Davis*, 571 S.W.2d at 861.

---

1. Although we recognize that appellate courts have the authority to modify an injunction order on appeal, under the unique circumstances presented in this case, we believe the more efficient means to clarify the scope of the injunction order is to remand the cause to the trial court with instructions regarding the entry of a modified order. *See Stocks v. Banner American Corp.*, 599 S.W.2d 665, 668 (Tex.Civ.App.-Texarkana 1980, no pet.) (reversing injunction order and remanded with instruction to the trial court to reform order).

## EFFECT OF ARBITRATION

In the first issue presented on appeal, Metra contends the trial court abused its discretion in entering the temporary injunction contrary to the Federal Arbitration Act ("FAA") and the public policy favoring arbitration. Metra asserts that Texas courts have held that trial courts have no authority to enter a temporary injunction when the case is properly subject to arbitration under the FAA. Lynd responds by asserting: (1) Metra waived any complaint under the FAA by failing to raise the complaint before the trial court and by contending that New York law was applicable; (2) Texas law permits a trial court to grant a temporary injunction in aid of arbitration; (3) even if preserved, the FAA does not preclude injunctive relief under the majority view; and (4) injunctive relief is proper under the FAA because the arbitration clause in the management agreements contain a no-encumbrance provision.

█ Lynd initially contends that Metra waived or is estopped from asserting its complaint under the FAA. Lynd correctly notes that Metra's arguments during the hearings preceding the injunction order addressed the application of New York law and the propriety of arbitrating in New York under the choice of law provisions contained in the management agreements. However, Metra presented its argument that the FAA applied and the injunction invaded the province of the arbitrator at the hearing on its motion to dissolve held October 12, 2004. Accordingly, we reject Lynd's waiver and estoppel arguments.

Other than asserting waiver and estoppel, Lynd does not assert any reason the FAA should not apply to the transaction between the parties. The management agreements are between Delaware limited partnerships and a Texas corporation. Money collected by the Texas corporation is deposited into a bank account and subject to withdrawal by the Delaware limited partnerships at any time. *See Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (noting FAA extends to any contract affecting commerce as far as the Commerce Clause of the United States Constitution will reach). Accordingly, we conclude that the FAA is applicable to the transaction. The question then becomes whether the FAA precludes the granting of injunctive relief.

In *RGI, Inc. v. Tucker & Associates, Inc.*, 858 F.2d 227, 228 (5th Cir.1988), the Fifth Circuit considered whether the FAA bars the issuance of a preliminary injunction pending arbitration. The Fifth Circuit noted that the other federal circuits were split on the issue. *Id.* The Fifth Circuit concluded that its resolution of the differences between the two views was unnecessary because the circuits opposing injunctive relief left open the possibility of granting injunctive relief where the parties had contemplated its use beforehand. *Id.* at 230. The Fifth Circuit noted that the agreement in question in *RGI* contained a provision requiring the agreement to continue in full force and effect until an arbitration decision was reached. *Id.* The Fifth Circuit reasoned that the bargained-for provision clearly contemplated that the status quo would continue pending arbitration and injunctive relief was appropriate to prevent one of the parties from terminating the contract. *Id.*

In *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, the Houston court noted that the federal courts in Texas generally agree that the issuance of a preliminary injunction is not appropriate when the underlying claims are subject to arbitration under the FAA. *Id.* at 885. The Houston court acknowledged the ex-

ception to this general rule created in *RGI* but concluded that the agreement before it contained no express language demonstrating that the parties contemplated court intervention to maintain the status quo. *Id.* at 885–87. The Houston court further reasoned, "And, we agree with Feldman that the relief Settlement Capital seeks is not to maintain the status quo provided in the legal services agreement, but to temporarily enjoin Feldman from conducting business." *Id.* at 887.

In this case, the arbitration clause in the management agreements contains the following provision:

(g) *Manager to Continue Performance.* It is hereby agreed that any differences of opinion between the parties, whether brought before the said Arbitrator or not, shall not constitute cause to the Manager to delay or cease the services or any of its obligations under this Agreement. In addition, it is hereby agreed that in any case, the process of arbitration under this Agreement, shall not delay the performance of any other work in connection with the Project, and the Arbitrator is not authorized to give any decision which may hinder the effective management and operation of the Project.

While this contractual provision would arguably provide a basis for Metra to insist on performance by Lynd pending arbitration of a dispute, it ceased to be applicable when the management agreements were terminated and three months lapsed before Lynd sought any relief. Because the management agreements contain no express language demonstrating that the parties contemplated court intervention to maintain the status quo, the exception to the general rule created in *RGI* is not applicable. *Feldman/Matz,* 140 S.W.3d at 885–87. We therefore follow the general rule applied by federal courts in Texas and

conclude that the issuance of a preliminary injunction is not appropriate when the underlying claims are subject to arbitration under the FAA. *Id.* at 885. As a result, the temporary injunction is overly broad in its application to the eight limited partnerships whose management agreements contained mandatory arbitration provisions, and the trial court is instructed to modify the injunction order to eliminate the enjoining of sales of the apartment complexes owned by those eight limited partnerships. Because the FAA is not applicable to Escalante and Promontory, we separately address Metra's remaining issues only as to those two limited partnerships.

## TEXAS UNIFORM FRAUDULENT TRANSFER ACT

In their second issue, Metra contends that the trial court erred in granting injunctive relief under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). In support of this contention, Metra asserts: (1) the temporary injunction's fraudulent transfer findings do not satisfy Rule 683; (2) the trial court improperly placed the burden of proof on Metra; and (3) no evidence supports any finding of a fraudulent transfer.

### 1. Rule 683

Metra contends that the temporary injunction's fraudulent-transfer findings do not satisfy Rule 683 because the injunction fails to state how Metra violated TUFTA. Metra asserts that the injunction was required to explain why payments to investors were fraudulent and identify the section of TUFTA that Metra violated. Lynd responds that the injunction satisfies Rule 683's requirements.

Rule 683 of the Texas Rules of Civil Procedure provides that an order granting an injunction "shall set forth the reasons for its issuance [and]; shall be specific in terms." TEX.R. CIV. P. 683. The rule

requires that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons the court believes the applicant's probable right will be endangered if the writ does not issue. *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 864 (Tex. App.-San Antonio 2003, no pet.). If the trial court's order for a temporary injunction does not state reasons why injury will be suffered if the interlocutory relief is not ordered, the order is void and must be dissolved. *Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 210 (Tex.App.-Houston [1st Dist.] 1991, no pet.).

In this case, the trial court's order generally states that injunctive relief is warranted to prevent immediate and irreparable injury, loss, and damage if Metra were permitted unfettered control of their assets. The order then states:

> Specifically, this Court finds that [Metra's] prior transfer of assets from the sale of the Escalante Apartments to Israel, beyond the jurisdictional reach of [this] Court, and to its insiders and investors, along with [Metra's] admission that it intends to continue to make further transfers, mandate extraordinary relief including the entry of this Temporary Injunction. Absent the entry of this Temporary Injunction Order, [Metra's] propensity for improperly [sic] transfer of assets in violation of the Texas Fraudulent Transfers Act, will most likely deprive Plaintiff of the ability to recover its losses and satisfy a judgment.

We conclude the order's findings are sufficiently specific.

## 2. Burden of Proof

Metra contends that the trial court improperly imposed the burden of proof on Metra rather than on Lynd. Metra quotes the trial court as stating, "I think the burden is on you to demonstrate that Metra United Escalante, LP of Delaware Limited Partnership has any assets." The record does not support Metra's contention.

After the trial court was provided with an overall view of the issue, the trial court stated its belief that the most important issue for the hearing was whether or not the transfers would render the owners under the contracts insolvent. In response, Lynd's attorney stated that she had enough deposition testimony to support a summary judgment on that issue. Lynd's attorney then provided the trial court with deposition excerpts from Robert Bracington's deposition. Bracington was the financial manager of the Metra holding company. The trial court read the excerpts and commented that it appeared that after the property was sold, the proceeds were distributed to the investors, and the owner no longer had any assets. Metra's attorney responded that the owner had $400,000 on deposit and an operating account. The court then re-read the depositions excerpt, in which Bracington responded as follows:

> "Regardless, Metra had 28 million, and they were dead broke on March 3rd, correct?"
>
> "ANSWER: No, they still had an equity, 5 million.
>
> "Where was that money? Where was the money?"
>
> "They didn't receive it. It was returned to the investors as a return of their equity. So that's gone."
>
> "What did Metra United Escalante, L.P. own or have title to March 3rd?"
>
> "Nothing."

After reading the excerpt, the trial court commented that the witness seemed to "say pretty clearly that the owner has zip after they distributed the proceeds from

the sale." Metra's attorney stated that he had the right to call Bracington as a witness and that Bracington intended his answer to mean that Escalante had no income-producing asset remaining but did have cash. After additional discussion regarding possible accounts, the following exchange occurred:

MR. BRACEY [Metra's attorney]: I was just about to say that I think Mr. Bracington, who's here to testify, understood the lack of asset question, in the sense of an accountant understands an asset; in this venture, means real property or personal property. And all that was conveyed on March 1st to the new owner. And we made a profit, a significant profit. We purchased these properties—

THE COURT: Okay. I think the burden is on you to demonstrate that Metra United Escalante, L.P. of Delaware Limited Partnership has any assets.

MR. BRACEY: Yes, Your Honor.

THE COURT: Because I have just read Bracington's deposition to say to the contrary. So you can call Bracington or what other evidence you wish to call on that issue.

MR. BRACEY: We will be glad to, Your Honor. Yes, Your Honor.

THE COURT: Okay. It's your turn, Mr. Bracey. I'm prepared to rule that they have no assets in the United States or elsewhere, based upon the transcript of Bracington's deposition that I've read. And if you wish to contest that with his or other testimony, I'd like to go forward and do that.

■ This exchange between Metra's attorney and the trial court did not improperly place the burden of proof on Metra. The trial court had the deposition testimony of the Metra holding company's chief financial officer, who stated that Escalante had no assets after the sale on March 3rd.

The trial court's statement merely acknowledged that the deposition excerpt established that Escalante was insolvent as a matter of law, and unless Metra had some evidence to reasonably explain the statements made during the deposition, Lynd would prevail in proving the insolvency issue. *Cf. Cantu v. Peacher*, 53 S.W.3d 5, 10–11 (Tex.App.-San Antonio 2001, pet. denied) (analyzing need for affidavit in summary judgment context to explain differences between affidavit and earlier deposition or affidavit would be disregarded and deposition would support summary judgment).

### 3. Evidence of Fraudulent Transfer

■ Metra contends that no evidence supports the trial court's fraudulent transfer findings because there was no evidence that the Escalante sale was made with the intent of depriving Lynd of the ability to recover its losses or satisfy its judgment. In addition, Metra contends that no evidence supports a finding that the transfer was for less than reasonably equivalent value or that the transfer made Escalante insolvent.

With regard to intent, section 24.006(a) defines a fraudulent transfer as to a present creditor as including a transfer made: (1) without receiving reasonably equivalent value; where (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. Tex. Bus. & Com.Code Ann. § 24.006(a) (Vernon 2002). Unlike a fraudulent transfer defined by section 24.005(a)(1), a fraudulent transfer defined by section 24.006(a) does not include intent as an element of required proof. *Compare* Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2002) *with* Tex. Bus. & Com.Code Ann. § 24.006(a) (Vernon 2002); *see also FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 478 n. 10 (Tex.App.-Houston [14th Dist.] 2002, no

pet.) (presuming fraudulent transfer claim limited to section 24.006 where plaintiff conceded that it was not asserting an actual intent to defraud); *Pyle v. First Nat. Bank in Cameron*, No. 03–98–00008–CV, 2000 WL 422894, *4 (Tex.App.-Austin April 20, 2000, no pet.).

With regard to whether Escalante received reasonably equivalent value and whether the transfer made Escalante insolvent, Metra seeks to focus on the value of the asset and the purchase price paid by the buyer. Metra seeks to ignore the evidence that Escalante never received the proceeds from the sale. Instead, the proceeds went directly to the Metra holding company and were immediately distributed to the investors. Accordingly, Escalante never received the purchase price paid by the buyer and, therefore, never received reasonably equivalent value for the apartment complex. Next, Metra contends that there was no evidence of Escalante's insolvency because it had a $500,000 intercompany receivable on its books that it was entitled to be paid by the Metra holding company. Bracington, however, testified that the Metra holding company determined when, whether and in what amount Escalante would be entitled to receive the receivable. Accordingly, the receivable was not an asset over which Escalante had control. Bracington further conceded that if the Metra holding company would not distribute the funds to Escalante, Escalante would likely be required to file a lawsuit to obtain the money. Because insolvency must be evaluated from the creditor's perspective, Escalante's lack of control over the sole asset on its books that was sufficient to satisfy its debt to Lynd is some evidence of insolvency. *National Loan Investors, L.P. v. Robinson*, 98 S.W.3d 781, 784 (Tex.App.-Amarillo 2003, pet. denied).

## SCOPE OF INJUNCTION, ACTUAL IMMINENT HARM & STATUS QUO

Metra next complains about the scope of the injunction, contending that it was overly broad because it prevented Metra from selling any of the apartment complexes when the only evidence related to the Escalante sale. A temporary injunction should be specific enough to inform the defendants of the acts they are refrained from doing, but not so broad as to prohibit the enjoyment of lawful rights. *Kaufmann v. Morales*, 93 S.W.3d 650, 655 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 583 (Tex.App.-San Antonio 1998, pet. denied).

■ Because we previously have held that the injunction may not extend to any entity other than Escalante and Promontory, we only address whether evidence was presented that would enable the trial court to enjoin the sale of the apartment complex by Promontory. Section 24.008 of TUFTA allows a trial court to enjoin "further disposition by the debtor or a transferee, or both, of the asset transferred or other property." TEX. BUS. & COM.CODE ANN. § 24.008(a)(3)(A) (Vernon 2002). As a result of the actions taken with regard to the proceeds of the sale of Escalante's apartment complex, both the Metra holding company and Escalante's investors became transferees. *See Telephone Equipment Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The record reflects that the Metra holding company had the same control over each of the Metra limited partnerships. It also appears from the record that each of the Metra limited partnerships had the same investors. The evidence showed how quickly the Metra holding company was able to control the sales proceeds from the Escalante apartment complex and distrib-

ute them following a sale. Metra appears to take the position that any sale by Promontory is based on mere speculation; however, the financial manager for the Metra holding company testified as follows:

THE COURT: Okay. Are the sales in the other properties currently pending?

THE WITNESS: I believe there's a pending sale on Promontory Point, or a pending contract.

THE COURT: And that is one of the— that is one of the ten?

THE WITNESS: That's one of the ten in San Antonio, yes.

THE COURT: And are there—Other than Promontory Point, are there any other sales pending at this time?

THE WITNESS: Not to my knowledge.

THE COURT: Okay.

Q. (BY MR. BRACEY [Metra's counsel]) Mr. Bracington, are you aware, do you know one way or another, whether a contract out on Promontory Point expired?

MS. LEMLER–CLARK [Lynd's counsel]: Objection; leading.

THE COURT: Oh, he can answer it.

THE WITNESS: I believe, if I remember correctly, in April, there was an expiration, I don't know if it was extended or not.

From this testimony, the trial court could have found that the possible sale by Promontory was more than mere speculation or a future possibility particularly when the financial manager of the Metra holding company was unclear as to whether or when the pending sales contract potentially expired. Accordingly, the trial court was within its discretion in enjoining the disposition of "other property" which would include Promontory's apartment complex. *See Davis,* 571 S.W.2d at 861 (trial court does not abuse its discretion when basing its decision on conflicting evidence).

■ Metra also contends that the temporary injunction is void because the scope of the persons subject to the injunctive relief is beyond the scope permitted by Rule 683. Rule 683 provides that an injunction order is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The order in this case states: "It is further Ordered that the Metra United Property Owners, their agents, *successors, substitutes, assigns, partners, representatives,* servants, employees, attorneys and *any other persons or entities in active concert or participation with the Metra United Defendants* (or with notice of this Order or the restrictions imposed by this Order) are hereby restrained from hindering . . . ." (italics added). The inclusion of italicized language makes the scope of the injunction overly broad; accordingly, the trial court is instructed to modify its order by limiting the scope of the persons enjoined to those provided in Rule 683.

■ Status quo is defined as the last, actual, peaceable, noncontested status which preceded the pending controversy. *Khaledi v. H.K. Global Trading, Ltd.,* 126 S.W.3d 273, 284 (Tex.App.-San Antonio 2003, no pet.). The trial court did not abuse its discretion in determining that the last peaceable, contested status of the parties was the operation of the apartment complexes in the ordinary course of business. The sale of one of the apartment complexes and the distribution of the proceeds therefrom resulted in the litigation.

■ An injunction order must be as definite, clear, and precise as possible and

should inform the defendant of the acts he is restrained from doing, without leaving anything for further hearing. *Khaledi*, 126 S.W.3d at 280–81. A defendant should not be required to draw inferences or conclusions about which persons may differ. *Id.* But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in a form identical to that employed prior to the injunction or in somewhat different form calculated to circumvent the injunction as written. *Id.*

 Metra contends that the injunction provisions requiring disclosure of the location of the funds from the Escalante sale and prohibiting Metra from making expenditures not in the ordinary course of business are too imprecise. At the hearing on the motion to dissolve the injunction, however, Metra's attorney stated that he did not have any objection to the provision regarding the disclosure of the location of funds. Furthermore, at the hearing setting a date for the injunction hearing, Metra's attorney acknowledged that he would certify the expenditures were in the normal course of business by submitting an affidavit and a list of the expenses paid. Furthermore, the phrase "ordinary course of business" is commonly used and has no special legal or technological meaning. *Helpinstill v. Regions Bank*, 33 S.W.3d 401, 405 (Tex.App.-Texarkana 2000, pet. denied). Accordingly, Metra has waived its complaint as to the provisions regarding disclosure and has either waived its complaint as to the "ordinary course of business" phrase or such phrase is sufficiently precise.

### Conclusion

The trial court's order is overly broad with regard to all of the Metra limited partnerships except Escalante and Promontory. The trial court's order is also overly broad with regard to the scope of the persons included. The trial court's order is reversed, and the cause is remanded to the trial court with instructions to modify the scope of the injunction order consistent with this opinion.