ACCEPTED
04-14-00796-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/30/2015 11:47:00 PM
KEITH HOTTLE
CLERK

No. 04-14-00796-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

01/30/2015 11:47:00 PM

KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS FOR THE
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

_____

LOCKHILL VENTURES, LLC,
APPELLANT,

V.

ARD MOR, INC.; ARDMOR PROPERTIES, LP; & TEXAS ARDMOR
MANAGEMENT, LLC,
APPELLEES.

_____

ON INTERLOCUTORY APPEAL FROM CAUSE NO. 2014-CI-10796, IN THE 407TH JUDICIAL
DISTRICT COURT IN BEXAR COUNTY, TEXAS
THE HON. RICHARD PRICE (SITTING BY ASSIGNMENT)

_____

## APPELLANT'S BRIEF ON THE MERITS

_____

Lance H. "Luke" Beshara
Texas State Bar No. 24045492
lbeshara@pulmanlaw.com
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Brandon L. Grubbs
Texas State Bar No. 24072130
bgrubbs@pulmanlaw.com
PULMAN, CAPPUCCIO,
PULLEN, BENSON & JONES, LLP
2161 N.W. Military Hwy., Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

ATTORNEYS FOR APPELLANT

# PARTIES AND COUNSEL

| Parties: | Counsel of Record: |
|---|---|
| Lockhill Ventures, LLC | Randall A. Pulman<br>Texas State Bar No. 16393250<br>rpulman@pulmanlaw.com<br>Lance H. "Luke" Beshara<br>Texas State Bar No. 24045492<br>lbeshara@pulmanlaw.com<br>**PULMAN, CAPPUCCIO,**<br>**PULLEN, BENSON & JONES, LLP**<br>2161 N.W. Military Hwy., Suite 400<br>San Antonio, Texas 78213<br>(210) 222-9494 Telephone<br>(210) 892-1610 Facsimile |
| Ard Mor, Inc.<br>Ardmor Properties, LP<br>Texas Ardmor Management, LLC | Jay K. Farwell<br>Texas State Bar No. 00784038<br>jayfarwell@cbylaw.com<br>Karen L. Landinger<br>Texas State Bar No. 00787873<br>klandinger@cbylaw.com<br>**COKINSO, BOSIEN & YOUNG**<br>10999 West IH-10, Suite 800<br>San Antonio, Texas 78230<br>(210) 293-8700 Telephone<br>(210) 293-8733 Facsimile |

# TABLE OF CONTENTS

Parties and Counsel ........................................................................................i

Table of Contents .......................................................................................... ii

Index of Authorities .....................................................................................iv

Statement of Jurisdiction ..............................................................................vi

Statement of Case ...................................................................................... vii

Oral Argument Statement ..............................................................................ix

Issues Presented... ..........................................................................................x

Statement of Facts.........................................................................................1

Summary of Argument ...................................................................................5

Standard of Review........................................................................................6

Argument.........................................................................................................7

    A. General Grounds for Temporary Injunction.................................................7

    B. Standing .................................................................................................9

    C. Interpretation of Restrictive Covenants .....................................................12

    D. Constitutional Violations.........................................................................15

Prayer……………...........................................................................................16

Certification…………….. ...............................................................................18

Certificate of Compliance ................................................................................18

Certificate of Service ......................................................................................19

Appendix ............................................................................................ Attached

# INDEX OF AUTHORITIES

**Cases**

*Ctr. for Econ. Justice v. Am. Ins. Ass'n*,
39 S.W.3d 337 (Tex. App. – Austin 2001, no pet.) .................................................16

*City of San Antonio v. Headwaters Coalition, Inc.*,
381 S.W.3d 543 (Tex. App. – San Antonio 2012, pet. denied) .......................... 6-7, 9

*City of Shavano Park v. Ard Mor, Inc.*;
Case No. 04-14-00781-CV;
in the Fourth Court of Appeals for the State of Texas ........................................... viii

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) ...............................................................................12

*Kinney v. Barnes*,
443 S.W.3d 87 (Tex. 2014) .................................................................................15

*Metra United Escalante, L.P. v. Lynd Co.*,
158 S.W.3d 535 (Tex. App. – San Antonio 2004, no pet.) ....................................16

*Munson v. Milton*,
948 S.W.2d 813 (Tex. App. – San Antonio 1997, pet. denied) ...............................8

*Reilly v. Rangers Mgmt., Inc.*,
727 S.W.2d 527 (Tex. 1987) ...............................................................................13

*Ski Masters of Tex., LLC v. Heinemeyer*,
269 S.W.3d 662 (Tex. App. – San Antonio 2008, no pet.) ..........................7, 10, 12

*Wilmoth v. Wilcox*,
734 S.W.2d 656 (Tex. 1987) ...............................................................................12

**Statutes**

San Antonio Municipal Code § 11-38 ...................................................................14

Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) ..........................................................vi

Tex. Civ. Prac. & Rem. Code § 51.014(b)................................................ viii

Texas Constitution, Article I, Section 8..................................................15

Texas Constitution, Article I, Section 27................................................15

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).

## STATEMENT OF THE CASE

The plaintiffs in the underlying lawsuit and appellees here are Ard Mor, Inc.; Ardmor Properties, LP; and Texas Ardmor Management, LLC (collectively, "**Appellees**"). By their Second Amended Original Petition and Application for Temporary Restraining Order and Original Answer, Appellees asserted causes of action for declaratory judgment and breach of contract. Appellees sought injunctive relief as well as an award of attorneys' fees and costs.

All of Appellees' claims center on the contention that certain restrictive covenants prohibit the defendant in the underlying lawsuit and appellant here, Lockhill Ventures, LLC ("**Appellant**"), from constructing a convenience store on the affected real property. Of importance to this appeal because this was the basis stated in the order granting the temporary injunction, Appellees claimed that the restrictive covenant against "[s]torage, handling or use of explosive material" prohibited the construction of a convenience store because it stores gasohol and diesel fuels in underground tanks for delivery to customers at the fuel pumps.

The trial court initially issued a temporary restraining order and later issued a temporary injunction that, among other things, prevents Appellant from constructing the proposed convenience store. Appellant appeals the trial court's Order for Temporary Injunction entered on October 29, 2014; the Temporary Injunction issued from the Clerk on November 5, 2014; and to the extent

necessary, the letter order from Judge Price dated October 10, 2014, which was superseded by the Order on Temporary Injunction.

Of additional note, Appellees also brought suit against the City of Shavano Park, which filed a plea to jurisdiction. The trial court denied the plea, and the City of Shavano Park has appealed that order in the appeal styled and numbered *City of Shavano Park v. Ard Mor, Inc., et al*.; Case No. 04-14-00781-CV; in the Fourth Court of Appeals for the State of Texas. Therefore, the underlying lawsuit is stayed pursuant to Tex. Civ. Prac. & Rem. Code § 51.014(b). As a result, Appellant is subject to the temporary injunction without any trial setting.

# <u>ORAL ARGUMENT STATEMENT</u>

Appellant requests oral argument.

# ISSUES PRESENTED

1. Did the trial court abuse its discretion in entering the Order for Temporary Injunction?

2. Did the trial court abuse its discretion by entering Order for Temporary Injunction based on factual assertions unsupported by the evidence in the record?

3. Did the trial court err as a matter of law by entering the Order for Temporary Injunction because there was no evidence that any of Appellees has standing to enforce the Restrictive Covenants?

4. Did the trial court err as a matter of law by entering the Order for Temporary Injunction based upon an erroneous interpretation of the Restrictive Covenants?

5. Did the trial court err by entering the Order for Temporary Injunction because it is overly broad in that it impermissibly infringes on Appellant's constitutional rights, including of free speech and to petition the government?

## STATEMENT OF FACTS

The facts giving rise to this lawsuit are simple and, for the most part, should not be subject to dispute. The most striking part of the record is the absence of evidence to support key facts necessary for Appellees to have been awarded the temporary injunction.

By Special Warranty Deed recorded on June 3, 2014, Appellant took title to two adjacent tracts of real property situated in Bexar County, Texas contiguous to, but outside of, the corporal limits of the City of Shavano Park (the "**LV Property**"). (RR7 at 22-29 [Plaintiffs' Exhibit 2]).[1]

The LV Property is burdened by the restrictions and limitations set forth in that certain Declaration of Restrictive Covenants (the "**Restrictive Covenants**") (RR7 at 7-21 [Plaintiffs' Exhibit 1]).

There is no evidence in the record that any of Appellees own any real property, much less: (1) property near the LV Property (referenced in the proceeding as being a childcare center); or (2) property that would somehow vest any of them with standing to the Restrictive Covenants. (RR Global, *passim*).[2]

Appellant intends to construct a convenience store with fuel pumps and a car wash (RR4 at 66:2-16 & 94:6-14; RR7 at 222-32 [Defendant's Exhibit 5]). The

---

[1] Citations to "RR__" refer to the Reporter's Record, with the "__" containing the number of the Volume out of the seven volumes.

[2] Citations to "RR Global" refer to the entire Reporter's Record, being Volumes 1-7.

fuel that would be sold from (and thus stored on) the LV Property would be diesel and gasohol, which is an EPA-approved mixture of gasoline and ethanol. (RR2 at 78:23-79:4; RR4 78:8-9).

Under the proposed plan of construction, this fuel would be stored in underground, triple-walled tanks that continuously monitor and send out an alarm for any leaks. (RR4 at 76:16-78:7). There is no air present in the tanks, the fuel is not pressurized, and there are no ignition sources available. (RR4 at 78:8-18). There is no other evidence in the record regarding the conditions under which Appellant would store gasohol. (RR Global, *passim*).

Regarding the refilling of the tanks, the only evidence in the record is that gasohol vapors are not released from the closed, self-contained system but rather recirculated back into the refueling trucks. (RR2 at 107:14-23; RR4 at 85:21-86:24).

The vapors of gasoline are uniformly classified as "flammable" and not "explosive" by government regulations. (RR2 at 106:19-25; RR3 at 23:23-25; RR4 at 137:9-138:10; RR7 at 219-221 [Defendant's Exhibit 2]). There is no dispute that gasoline in liquid form is not explosive. (RR2 at 107:6-8; RR3 at 16:1-10; RR4 154:23-155:6; RR5 at 19:1-3). Gasoline vapors, in and of themselves, are not explosive. (RR2 at 77:19-20, 115:2-12; RR4 at 151:24-152:4, 157:6-10). Under specific conditions, however, gasoline vapors can be made

2

explosive.  (RR2 at 77:19-20, 104:5-8, 104:22-105:8, 116:19-117:5).  But, that is also true for corn, grain, any gas including oxygen, and even Coca-Cola.  (RR2 at 104:9-13; RR4 at 101:19-102:11, 139:2-7; RR5 at 42:17-18).

Even according to Appellees, gasoline vapors could possibly be explosive only when: (1) mixed with air; (2) in the right proportions; (3) exposed to an ignition source; and (4) in a confined space (i.e., under some elevated pressure).  (RR2 at 82:3-6, 85:24-86:3, 94:22-95:2, 95:7-16, 97:6-10; RR3 at 36:7-23; RR4 at 158:3-16).  In other words, gasoline vapors can be explosive or not explosive, depending on the conditions.  (RR2 at 97:6-10 & 98:24-99:1).

But, just because something (indeed, everything) can be made to explode does not make it an explosive material.  (RR2 at 104:5-15, 104:22-105:8; RR4 at 138:11-15).  Under normal conditions, including those existing when it is stored in underground tanks such as proposed by Appellant here, gasoline is stable, and not explosive even when exposed to a direct flame.  (RR2 at 115:2-12; RR3 at 12:5-9; RR4 at 135:11-21, RR4 at 158:3-16; RR5 at 43:3-8, 81:2-14, 86:4-87:12).  Of course, it is not probable that a gas station will explode.  (RR3 at 49:13-20).

There is no evidence in the record that the vapors of gasohol are explosive under the conditions under which Appellant proposes to store gasohol.  (RR Global, *passim*).

3

The evidence in the record establishes that most vehicles use gasoline, which is stored in the gas tank of the automobile; that the childcare center parks its own gasoline-filled vehicles on its property; the childcare center transports its students in buses that use gasoline; the childcare permits automobiles and buses using gasoline to enter onto its property, park, and turn on and off the engine. (RR2 at 42:19-43:4, 44:23-46:11).

The childcare facility was built across the street from a pre-existing Texaco gas station. (RR2 at 43:10-44:2).

On October 29, 2014, the trial court signed and entered the Order for Temporary Injunction. (CR2 at 137-141 [Doc. No. 26]).[3] In this order, the trial court made a finding of fact that evidence was presented during the hearing that shows: (1) "gasoline vapors are explosive under certain conditions"; and (2) that gasoline vapors will most certainly be stored, handled or used on the LV Property if it is allowed to be developed and operated as currently planned by Appellant. (*Id.*).

On November 5, 2014, the Bexar County District Clerk signed and issued the Temporary Writ of Injunction. (CR2 at 142-145 [Doc. No. 27]).

---

[3] Citations to "CR2" refer to the Clerk's Record, Volume 2.

## SUMMARY OF ARGUMENT

There was no evidence presented to establish key elements necessary to entitle Appellees to the temporary injunctive relief.

Appellees only presented some evidence that gasoline vapors could be explosive "under certain conditions," which the trial court found in its Order for Temporary Injunction. For example, Appellees presented no evidence of the "certain conditions" under which Appellant proposes to store gasohol, much less evidence that gasoline vapors would be explosive under such conditions.

Appellees failed to present any evidence that any of them have standing to enforce the Restrictive Covenants, despite Appellant's written objection on this point. Appellees presented no evidence of what real property they allege to own, or how such alleged ownership would entitle them to enforce the Restrictive Covenants, which on their face apply only to Appellant's property and an adjacent property owned by a dental practice. Moreover, the Restrictive Covenants specify that enforcement or non-enforcement is in the discretion of the "Declarant," a defined term that does not include any of Appellees.

The trial court erred in its interpretation of the Restrictive Covenants by concluding that gasoline vapors are prohibited explosive material. After applying the standard rules of contract interpretation against the backdrop that restrictions on the free use of real property are disfavored and any doubts must be resolved in

5

favor free use, the trial court's interpretation yields the absurd result that: (1) no material that can ever be explosive under certain conditions (including corn, grain, air including oxygen, and even Coca-Cola) is permitted to be stored on the property; and (2) items with gasoline-powered engines, such as automobiles, cannot be used on the property.

Finally, the Order for Temporary Injunction is overly broad and impermissibly interferes with Appellant's constitutional rights, including of free speech and to petition the government.

The Order for Temporary Injunction should be reversed and vacated, and the Temporary Writ of Injunction should be dissolved. Alternatively, the Order for Temporary Injunction and the Temporary Writ of Injunction should be vacated and dissolved in part to address the constitutional violations, or modified by this Court directly.

## STANDARD OF REVIEW

The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *See City of San Antonio v. Headwaters Coalition, Inc.*, 381 S.W.3d 543, 551 (Tex. App. – San Antonio 2012, pet. denied). A trial court abuses its discretion when: (1) it does not properly apply the law to the undisputed facts; (2) it acts arbitrarily or unreasonably; or (3) its ruling is based on factual assertions unsupported by the record. *Id*.

6

A trial court's construction of a restrictive covenant is reviewed de novo. *See Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App. – San Antonio 2008, no pet.).

Standing is a legal question reviewed de novo. *See id.*

## ARGUMENT

### A. General Grounds for Temporary Injunction

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *See Headwaters*, 381 S.W.3d at 550. The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *See id.* A trial court abuses its discretion when it does not properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *See id.*

To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *See id.*

To show a probable right to the relief sought, the applicant is not required to establish it will prevail on final trial. *See id.* However, if the applicant does not both plead a cause of action and present some evidence that supports a probable right of recovery, then a temporary injunction is not proper. *See id.*

An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *See id.* Where a temporary injunction is sought to enforce a restrictive covenant, however, the movant is not required to show proof of irreparable injury. *See Munson v. Milton*, 948 S.W.2d 813, 815-16 (Tex. App. – San Antonio 1997, pet. denied).

As discussed below, there was no evidence presented on a number of points on which Appellees were required to present evidence to establish a probable right of recovery. The trial court only found that: (1) "gasoline vapors are explosive <u>under certain conditions</u>"; and (2) gasoline vapors will most certainly be stored, handled or used on the LV Property if Appellant was allowed to construct its convenience store. (CR2 at 137-141 [Doc. No. 26] at ¶3) (emphasis added). Appellant does not dispute there was some evidence on the first of these points.

Even if it is assumed there was evidence to support both of these findings, however, it is not enough to support the entry of the Temporary Injunction. There was no evidence: (1) that gasoline (as opposed to gasohol and diesel) or gasoline vapors would be stored, handled or used on the LV Property; (2) that the vapors of gasohol or diesel can explode under any circumstances; (3) of the actual conditions under which gasoline vapors are actually explosive; or (4) of the conditions under

which Appellant proposed to store, handle or use gasohol or diesel were conditions such as to render gasoline vapors explosive.

The only evidence put before the trial court was that gasoline vapors can under "certain conditions" be explosive (as the trial court found), not that gasoline vapors are explosive under all conditions, or even under those "certain conditions" that Appellant intends to store gasohol and diesel. Appellees simply failed to connect the dots and could not do so because there was no evidence presented on a critical element in the chain of their argument.

Because Appellees failed to present any evidence that gasoline vapors are explosive under the proposed conditions Appellant intends to store gasohol (as opposed to the abstract concept that gasoline vapors can be explosive under certain conditions, which is the same all substances such as corn, grain, any gas including oxygen, and even Coca-Cola), the trial court abused its discretion by entering the Order for Temporary Injunction.

## B. Standing

Standing focuses on the question of who may bring an action. *See Headwaters*, 381 S.W.3d at 548. Because standing is a component of subject-matter jurisdiction, it cannot be waived and can even be raised for the first time on appeal. *See id*. The test for standing is whether there is: (1) a real controversy

9

between the parties, (2) that will be actually determined by the judicial declaration sought. *See Ski Masters*, 269 S.W.3d at 667-68.

A restrictive covenant is normally enforceable only by the contracting parties and those in direct privity of estate with them. *See id*. at 668. Circumstances do exist, however, in which a restrictive covenant may be enforced by someone other than the grantor or grantee, such as a person entitled to benefit under the restrictive covenant. *See id*. During the hearings below, Appellees failed to present evidence that any of them are entitled to benefit under the Restrictive Covenants.

Here, Appellant objected to Appellees' lack of standing in the trial court. (RR7 at 190-209 [Plaintiff's Exhibit 20]). Notwithstanding, Appellees failed to present any evidence in support of their standing to enforce the Restrictive Covenants. (RR Global, *passim*). For example, Appellees failed to tender or have admitted any exhibits (such as a deed), or present any testimony, demonstrating: (1) any of them own real property in the vicinity of the LV Property; (2) the identity of the person from whom Appellees allegedly acquired any real property, or that Appellant acquired the LV Property from a common source, or that Appellees acquired their real property subject to any restrictive covenants; or (3) any of them were parties to the Restrictive Covenants, owned real property subject to the Restrictive Covenants, or were otherwise entitled to enforce the Restrictive Covenants.

10

The only evidence before the trial court demonstrated that none of Appellees has standing to enforce the Restrictive Covenants. (RR7 at 190-209 [Plaintiff's Exhibit 20]). For example, the Restrictive Covenants themselves indicate the "Declarant" (defined as Shavano Creek Commercial Partnership Unit 1, Ltd.) is the only one with the right (but not any obligation) to enforce the Restrictive Covenants. (RR7 at 7-21 [Plaintiffs' Exhibit 1] at ¶7). The evidence demonstrated that the "Declarant" was no longer in existence. (RR7 at 187-89 [Plaintiffs' Exhibit 19]).

For example, the Restrictive Covenants themselves indicate that the only real property affected by them is a 3.079 acre tract of land. (RR7 at 7-21 [Plaintiffs' Exhibit 1] at Exhibit A). Appellees failed to tender or have admitted any exhibits (such as a deed), or present any testimony, demonstrating any of them owned real property within the 3.079 acre tract. (RR Global, *passim*).

To the contrary, the only testimony and admitted exhibits demonstrated: (1) none of Appellees owned real property within the 3.079 acre tract; (2) there are only two owners of real property within the 3.079 acre tract – Appellant and Advanced Smile Care, a dental practice. (RR4 at 53:9-55:16; RR7 at 22-29 [Plaintiffs' Exhibit 2], 236 [Defendant's Exhibit 6]).

Because Appellees failed to present any evidence in support of any of their standing to enforce the Restrictive Covenants, the trial court err as a matter of law by entering the Order for Temporary Injunction.

## C. Interpretation of Restrictive Covenants

A restrictive covenant is a contractual agreement between the seller and the purchaser of real property. *See Ski Masters*, 269 S.W.3d at 668. When construing a restrictive covenant, general rules of contract construction apply. *See id*. at 667. Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Id*.; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003) ("Contracts are to be read as a whole, and an interpretation that gives effect to every part of the agreement is favored so that no provision is rendered meaningless or as surplusage."). In construing restrictive covenants, the primary intent is to ascertain and give effect to the true intention of the parties as expressed in the instruments. *Id*.

Covenants restricting the free use of land are disfavored. *See Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it. *See id*. Restrictive covenants should not be interpreted in a manner that is unreasonable, inequitable,

12

or oppressive, or would lead to an absurd result. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

The interpretation of the Restrictive Covenants advanced by Appellees – that gasohol cannot be stored, handled or used on the LV Property – should be rejected because it runs counter to settled rules regarding the interpretation of restrictive covenants.

First, gasoline is not considered an explosive under any governmental regulations. Rather, gasoline is uniformly classified as a flammable material. (RR2 at 106:19-25; RR3 at 23:23-25; RR4 at 137:9-138:10; RR7 at 219-221 [Defendant's Exhibit 2]).

Second, the undisputed evidence presented during the hearings was not that gasoline vapors are <u>always</u> explosive, or explosive <u>in the abstract</u>. Rather, gasoline vapors are only explosive "under certain conditions," as the trial court found. (RR2 at 82:3-6, 85:24-86:3, 94:22-95:2, 95:7-16, 97:6-10, 98:24-99:1; RR3 at 36:7-23; RR4 at 158:3-16).

Third, the Restrictive Covenants must be read together as a whole. The Restrictive Covenants contemplate the construction of electrical and gas distribution facilities. (RR7 at 7-21 [Plaintiffs' Exhibit 1] at ¶1(g)). If gasoline were intended to fall within the category of explosive material that is prohibited by the Restrictive Covenants, then the inclusion of these types of facilities within the

definition of improvements would be surplusage, which also indicates that Appellees' interpretation is unreasonable and incorrect.

Fourth, the Restrictive Covenants cannot be interpreted to ban the storage, handling or use of any material that can possibly be explosive "under certain circumstances" because this would lead to absurd results. The unchallenged evidence presented during the hearings was that corn, grain, any gas including oxygen, and even Coca-Cola can be explosive under certain conditions. (RR2 at 104:9-13; RR4 at 101:19-102:11, 139:2-7; RR5 at 42:17-18).

In addition, if Appellees' interpretation were accepted just with respect to gasoline only, then no machines using gasoline-powered engines (e.g., automobiles, lawn equipment, generators, etc.) could be stored, handled or used on any of these properties. If that were the case, then these properties could exist only as a nature preserve, and not even a childcare facility. If gasoline were actually an explosive material, then gas stations would be prohibited in the entire City of San Antonio. *See* San Antonio Municipal Code § 11-38 (prohibiting explosives within 5,000 feet of the corporal limits).

The interpretation Appellees advance, and which was preliminarily accepted by the trial court by entering the Order for Temporary Injunction, cannot withstand de novo review. Covenants restricting the free use of land are disfavored, and all doubts must be resolved in favor of the free and unrestricted use of property. Even

14

if there were any doubt regarding the error of the contract interpretation Appellees advance, this doubt must be resolved in favor of Appellant's free use of the LV Property.

The interpretation of the Restrictive Covenants is a question of law. Because the interpretation of the Restrictive Covenants offered by Appellees and accepted by the trial court violates principles of contract interpretation, the trial court erred as a matter of law by entering the Order for Temporary Injunction.

## D. Constitutional Violations

Appellant enjoys constitutional rights under the 1st Amendment of the United States Constitution and Article I, Sections 8 and 27 of the Texas Constitution, including freedom of speech and freedom to petition the government. Notwithstanding, the Order on Temporary Injunction prohibits Appellant from:

> Commencing or continuing with any applications for approval by the City of Shavano Park or any other governmental authority to use the above described real property for storage or sale of gasoline or other explosive material.

(CR2 at 137-141 [Doc. No. 26] at p. 3). This particular component of the injunction impermissibly invades Appellant's constitutional rights.

The prior restraint of Appellant's exercise of its constitutional rights is presumptively invalid. *See Kinney v. Barnes*, 443 S.W.3d 87, 90 (Tex. 2014). Appellees presented no evidence sufficient to overcome the presumption that the prior restraints are unconstitutional. Appellees could not be imminently or

15

irreparably harmed if Appellant's are permitted to exercise its constitutional rights. If the temporary injunction remains in place, the speech and petitions will not necessarily or immediately result in the construction of a convenience store.

Therefore, the temporary injunction is overly broad and not sufficiently narrowly tailored. If the temporary injunction is not vacated in full, then Appellant requests this part of the temporary injunction be reversed or modified. *See Metra United Escalante, L.P. v. Lynd Co*., 158 S.W.3d 535, 544 (Tex. App. – San Antonio 2004, no pet.); *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 347 (Tex. App. – Austin 2001, no pet.).

## PRAYER

**WHEREFORE**, **PREMISES CONSIDERED**, Appellant requests reverse the trial court's Order for Temporary Injunction; dissolve the Temporary Writ of Injunction or in the alternative modify the Order and Writ; render judgment in favor of Appellant on the basis that Appellees lack standing to bring this lawsuit to enforce the Restrictive Covenants; and award Appellant all such other and further relief, both general and special, at law or in equity, to which Appellant may be entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO,
PULLEN, BENSON & JONES, LLP**
2161 N.W. Military Hwy., Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile


By: _/s/ Lance H. "Luke" Beshara____
Lance H. "Luke" Beshara
Texas State Bar No. 24045492
lbeshara@pulmanlaw.com
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Brandon L. Grubbs
Texas State Bar No. 24072130
bgrubbs@pulmanlaw.com

**ATTORNEYS FOR APPELLANT**

## CERTIFICATION

My name is Lance H. "Luke" Beshara. I am the attorney for Appellant. I certify that I have reviewed the Appellant's Brief and conclude that every factual statement therein is supported by competent evidence included in the appendix or record.

*/s/ Lance H. "Luke" Beshara*
Lance H. "Luke" Beshara

## CERTIFICATE OF COMPLIANCE

My name is Lance H. "Luke" Beshara. I am the attorney for Appellant. Pursuant to TEX. R. APP. P. 9.4(i)(3), I hereby certify that I have reviewed the Appellant's Brief and the total word count for the word-processor-typed words is 4,705.

*/s/ Lance H. "Luke" Beshara*
Lance H. "Luke" Beshara

## CERTIFICATE OF SERVICE

I certify that on the 30th day of January, 2015, the foregoing document was

e-filed with the Clerk of the Fourth Court of Appeals and was served by email or

the e-File system upon the following:

Jay K. Farwell
Karen L. Landinger
**COKINSO, BOSIEN & YOUNG**
10999 West IH-10, Suite 800
San Antonio, Texas  78230

> */s/ Lance H. "Luke" Beshara*
> Lance H. "Luke" Beshara

No. 04-14-00796-CV

IN THE COURT OF APPEALS FOR THE
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

_____

LOCKHILL VENTURES, LLC,
APPELLANT,

V.

ARD MOR, INC.; ARDMOR PROPERTIES, LP; & TEXAS ARDMOR
MANAGEMENT, LLC,
APPELLEES.

_____

ON INTERLOCUTORY APPEAL FROM CAUSE NO. 2014-CI-10796, IN THE 407TH JUDICIAL
DISTRICT COURT IN BEXAR COUNTY, TEXAS
THE HON. RICHARD PRICE (SITTING BY ASSIGNMENT)

APPENDIX IN SUPPORT OF APPELLANT'S BRIEF ON THE
MERITS

Tab 1      TEX. CIV. PRAC. & REM. CODE § 51.014

Tab 2      SAN ANTONIO MUNICIPAL CODE § 11-38

Tab 3      TEX. R. APP. P. 9.4(i)(3)



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 2.   TRIAL, JUDGMENT, AND APPEAL
SUBTITLE D.   APPEALS
CHAPTER 51.   APPEALS
SUBCHAPTER B.   APPEALS FROM COUNTY OR DISTRICT COURT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

Tex. Civ. Prac. & Rem. Code § 51.014   (2014)

§ 51.014.   Appeal from Interlocutory Order

   (a) A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that:

   (1) appoints a receiver or trustee;

   (2) overrules a motion to vacate an order that appoints a receiver or trustee;

   (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

   (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

   (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

   (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

   (7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

   (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

   (9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

   (10) grants relief sought by a motion under Section 74.351(*l*);

   (11) denies a motion to dismiss filed under Section 90.007; or

   (12)   *[2 Versions: As added by Acts 2013, 83rd Leg., ch. 44]* denies a motion for summary judgment filed by an electric utility regarding liability in a suit subject to Section 75.0022.

(12) *[2 Versions: As added by Acts 2013, 83rd Leg., ch. 1042]* denies a motion to dismiss filed under Section 27.003.

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), or in a suit brought under the Family Code, stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), (8), or (12) also stays all other proceedings in the trial court pending resolution of that appeal.

(c) A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

(1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

(2) the 180th day after the date the defendant files:

(A) the original answer;

(B) the first other responsive pleading to the plaintiff's petition; or

(C) if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

(d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

(1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

(2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

(d-1) Subsection (d) does not apply to an action brought under the Family Code.

(e) An appeal under Subsection (d) does not stay proceedings in the trial court unless:

(1) the parties agree to a stay; or

(2) the trial or appellate court orders a stay of the proceedings pending appeal.

(f) An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

## Sec. 11-38. - Establishment of limits of districts in which storage of explosives and blasting agents is prohibited.

The limits referred to in Section 5601 of the International Fire Code, in which storage of explosives and blasting agents is prohibited, are hereby established at five thousand (5,000) feet beyond the corporate limits of the city.

*(Code 1959, § 15-7; Ord. No. 55205, § 2, 4-15-82; Ord. No. 65619, § 1, 9-3-87; Ord. No. 79918, § 2, 3-31-94; Ord. No. 99482, § 2, 7-22-04; Ord. No. 2007-04-05-0360, § 8, 4-5-07; Ord. No. 2011-12-01-0985, § 3, 12-1-11)*

Tab 2, Page 1 of 1



Texas Rules
Copyright (c) 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through December 15, 2014 ***

STATE RULES
TEXAS RULES OF APPELLATE PROCEDURE
SECTION ONE. GENERAL PROVISIONS

Tex. R. App. P. Rule 9.4 (2014)

9.4.    *Form.* --Except for the record, a document filed with an appellate court, including a paper copy of an electronically filed document, must - unless the court accepts another form in the interest of justice - be in the following form:

(a)    *Printing.* --A document may be produced by standard typographic printing or by any duplicating process that produces a distinct black image. Printing must be on one side of the paper.

(b)    *Paper Type and Size.* --The paper on which a document is produced must be 81/2 by 11 inches, white or nearly white, and opaque.

(c)    *Margins.* --Documents must have at least one-inch margins on both sides and at the top and bottom.

(d)    *Spacing.* --Text must be double-spaced, but footnotes, block quotations, short lists, and issues or points of error may be single-spaced.

(e)    *Typeface.* --A document produced on a computer must be printed in a conventional typeface no smaller than 14-point except for footnotes, which must be no smaller than 12-point. A typewritten document must be printed in standard 10-character-per-inch (cpi) monospaced typeface.

(f)    *Binding and Covering.* --A paper document must be bound so as to ensure that it will not lose its cover or fall apart in regular use. A paper document should be stapled once in the top left-hand comer or be bound so that it will lie flat when open. A paper petition or brief should have durable front and back covers which must not be plastic or be red, black, or dark blue.

(g)    *Contents of Cover.* --A document's front cover, if any, must contain the case style, the case number, the title of the document being filed, the name of the party filing the document, and the name, mailing address, telephone number, fax number, if any, email address, and State Bar of Texas identification number of the lead counsel for the filing party. If a party requests oral argument in the court of appeals, the request must appear on the front cover of that party's first brief.

(h)    *Appendix and Original Proceeding Record.* --A paper appendix may be bound either with the document to which it is related or separately. If separately bound, the appendix must comply with paragraph (f). A paper record in an original proceeding or a paper appendix must be tabbed and indexed. An electronically filed record in an original proceeding or an electronically filed appendix that includes more than one item must contain bookmarks to assist in locating each item.

(i)    *Length.*

(1)    *Contents Included and Excluded.* --In calculating the length of a document, every word and every part of the document, including headings, footnotes, and quotations, must be counted except the following: caption, identity

of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

(2)   *Maximum Length.* --The documents listed below must not exceed the following limits:

(A) A brief and response in a direct appeal to the Court of Criminal Appeals in a case in which the death penalty has been assessed: 37,500 words if computer-generated, and 125 pages if not.

(B) A brief and response in an appellate court (other than a brief under subparagraph (A)) and a petition and response in an original proceeding in the court of appeals: 15,000 words if computer generated, and 50 pages if not. In a civil case in the court of appeals, the aggregate of all briefs filed by a party must not exceed 27,000 words if computer-generated, and 90 pages if not.

(C) A reply brief in an appellate court and a reply to a response to a petition in an original proceeding in the court of appeals: 7,500 words if computer-generated, and 25 pages if not.

(D) A petition and response in an original proceeding in the Supreme Court, a petition for review and response in the Supreme Court, a petition for discretionary review in the Court of Criminal Appeals, and a motion for rehearing and response in an appellate court: 4,500 words if computer-generated, and 15 pages if not.

(E) A reply to a response to a petition for review in the Supreme Court, a reply to a response to a petition in an original proceeding in the Supreme Court, and a reply to a petition for discretionary review in the Court of Criminal Appeals: 2,400 words if computer-generated, and 8 pages if not.

(3)   *Certificate of Compliance.* --A computer-generated document that is subject to a word limit under this rule must include a certificate by counsel or an unrepresented party stating the number of words in the document. The person certifying may rely on the word count of the computer program used to prepare the document.

(4)   *Extensions.* --A court may, on motion, permit a document that exceeds the prescribed limit.

(j)   *Electronically Filed Documents.* --An electronically filed document must:

(1) be in text-searchable portable document format (PDF);

(2) be directly converted to PDF rather than scanned, if possible;

(3) not be locked;

(4) be combined with any appendix into one computer file, unless that file would exceed the size limit prescribed by the electronic filing manager; and

(5) otherwise comply with the Technology Standards set by the Judicial Committee on Information Technology and approved by the Supreme Court.

(k)   *Nonconforming Documents.* --If a document fails to conform with these rules, the court may strike the document or identify the error and permit the party to resubmit the document in a conforming format by a specified deadline.